UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SUBSERO CAPITAL, LLC,

Plaintiff,

v.

NATURE'S TREATMENT OF THE QUAD CITIES, LLC, et al.,

Defendants.

No. 25 CV 15814

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

In 2022, two affiliates of Subsero Capital agreed to buy interests in two Illinois cannabis dispensaries for $70 million. The deal called for Subsero Capital to guarantee the purchase price. After the transaction fell through for want of regulatory approval, the sellers sued Subsero Capital in state court for breaching the guaranty. Subsero Capital responded that it had never signed the guaranty and that the signed copy attached to the sellers' complaint was a forgery. That litigation is still pending, but after one of the sellers' lawyers testified about how the signed document had been assembled, Subsero Capital brought this suit against the sellers and their lawyers, alleging fraud, conspiracy to commit fraud, and abuse of process. Defendants now move to dismiss. Because Subsero Capital never relied on the guaranty, and because the complaint identifies no misuse of any court's process, the motions to dismiss are granted and the complaint is dismissed with prejudice.

## I. Legal Standards

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When analyzing the sufficiency of a complaint, I construe it in the light most favorable to the plaintiffs, accepting all well-pleaded facts as true and drawing all inferences in their favor. *Atlanta Gas Light Co. v. Navigators Ins. Co.*, 164 F.4th 1038, 1046 (7th Cir. 2026). In addition to the allegations in the complaint, I may "consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Id.*

Rule 8(a) "does not demand detailed factual allegations, but it does require more than mere 'labels and conclusions,' or a 'formulaic recitation of the elements of a cause of action.'" *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 494–95 (7th Cir. 2025) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 495 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Put another way, the complaint must "present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Beyond the requirements of 8(a), to the extent that plaintiffs' claims sound in fraud, they "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

"Because 'complaints need not anticipate and attempt to plead around defenses," a motion to dismiss based on failure to comply with the statute of limitations should be granted only where 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Chi. Bldg. Design, P.C.*

*v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014) (quoting *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir.2004) then *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). "In other words, the plaintiff must affirmatively plead himself out of court; the complaint must 'plainly reveal that the action is untimely under the governing statute of limitations.'" *Id.* at 614 (cleaned up).

## II. Facts

In January 2022, two special-purpose entities, Subsero Milan Ops, LLC and Subsero Galesburg Ops, LLC, agreed to buy the membership interests in two licensed cannabis dispensaries from the companies and individuals the complaint calls "NTI." [1] ¶¶ 1, 29, 45–49.[1] The price was $70 million. [64] at 3; [66] at 2. Subsero Capital was to guarantee the buyers' obligations. [1] ¶¶ 2, 7, 80. A draft guaranty was among the documents the parties negotiated and submitted, unsigned, to the Illinois Department of Financial and Professional Regulation. [1] ¶ 80. Subsero Capital never signed the guaranty and never authorized anyone to sign it. [1] ¶¶ 2, 81.

The deal required approval from the IDFPR, and approval required executed amendments and personal paperwork from each seller. [1] ¶¶ 30–37, 62–63. The complaint alleges that the sellers deliberately withheld those documents so they could keep collecting distributions from the dispensaries, and that the transaction terminated by its own terms when the closing date passed. [1] ¶¶ 36–38, 66–77.

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from the complaint, [1], its exhibits, and from the filings and orders attached to defendants' motions. I notice judicial records for the fact that they were filed and what they say, not for the truth of any assertion in them. *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012).

NTI was represented in the transaction by Matthew O'Connor and William Choslovsky of Ginsberg Jacobs, LLC. [1] ¶ 79. In November 2022, NTI sued Subsero Capital, the two buyers, and the buyers' negotiator in the Circuit Court of Cook County, attaching what it represented was the executed guaranty. [1] ¶¶ 78, 84–85; [64-1]. The only claim against Subsero Capital was for breach of that guaranty. [1] ¶ 78. Subsero Capital alleges that the document was a fabrication—its signature page bears the same document-control number as the signature page of a different document, a written consent of the sole stockholder of Subsero Holdings–Illinois, Inc., while the draft guaranty's own signature page bore a different number and different closing language. [1] ¶¶ 82–88. In preparation for NTI's lawsuit against Subsero, O'Connor removed the control number from a Word version of the unsigned guaranty and appended the signature page from the written consent, at Choslovsky's direction. [1] ¶¶ 93–95, 126–27. NTI also filed an affidavit from O'Connor attesting to the circumstances of the guaranty's execution. [1] ¶¶ 4, 84, 97; [1-3].

Subsero Capital's first response in the Cook County case was a motion to dismiss and for sanctions. [64-2]. The motion asserted that NTI had "doctored up a false signature page to misrepresent to this Court and the defendants that it is actually an executed Guaranty," that "the signature page used in the fabricated copy of the Guaranty was taken from a wholly separate executed agreement and inserted by Plaintiffs to create a fake Guaranty," and that NTI "and their attorneys not only knowingly filed a false document with this Court to support their lawsuit, but they actually altered the signature page of that document themselves to create the

misrepresentation." [64-2] at 2, 5, 8. The circuit court denied both that motion and a second motion to dismiss premised on the same theory. [64-3]; [66-9]; [66-10].

In 2025, Subsero Capital deposed O'Connor. [1] ¶¶ 4, 91. O'Connor testified that he created the signed guaranty for use in the litigation, at Choslovsky's request, by removing the control number from the Word draft and attaching the other document's signature page, and that there was no signed guaranty in January 2022. [1] ¶¶ 91–95, 98; [1-4]. After the deposition, NTI filed verified second and third amended complaints in the Cook County case, each still asserting the guaranty claim against Subsero Capital. [1] ¶¶ 5, 91, 99–101, 105. Christopher Wilkes of Ginsberg Jacobs signed those pleadings along with Choslovsky. [1] ¶¶ 99–101, 138–39. James Zmuda and his firm, Califf & Harper, P.C., also represented NTI in the Cook County case and had filed a separate suit on NTI's behalf in Rock Island County against Subsero Capital, its principal Bret Russell, and affiliated entities, arising from the same transaction. [1] ¶¶ 102, 109–11. None of the lawyers withdrew the guaranty claim after the deposition. [1] ¶¶ 5, 102, 158–59.

Subsero Capital filed counterclaims against NTI and a third-party complaint against the lawyers in the Cook County case alleging forgery, conspiracy, fraud, and abuse of process. [65-4]; [66-6]; [66-11]. The circuit court struck the counterclaims and dismissed the third-party complaint, [66-3], and dismissed refiled counterclaims with fourteen days to replead. [66-3]; [66-4]; [66-13]. Subsero Capital filed this suit instead, on December 31, 2025. [1]. NTI's Cook County case against Subsero Capital, including the claim of breach of the guaranty, remains pending. [64] at 7; [72] at 9.

In this suit, the complaint also alleges that defendants have used the two state suits to pressure Russell to pay NTI and to exit the Illinois cannabis market, and have used discovery to learn about the operations, finances, and expansion plans of Russell's other companies, including by deposing Russell's wife about the family's assets. [1] ¶¶ 96, 111–16, 174. Subsero Capital alleges that it has incurred hundreds of thousands of dollars in legal fees defending the state cases, along with unspecified lost opportunities and reputational harm. [1] ¶¶ 41, 117–18, 131–32.

The complaint asserts four theories of liability: fraud against Choslovsky and O'Connor for creating and using the forged guaranty (Count I); fraud against Wilkes and Ginsberg Jacobs for filing pleadings that relied on it (Count II); conspiracy to commit that fraud against all defendants (Count III); and abuse of process against all defendants (Count IV). [1] ¶¶ 119–76. The defendants now move to dismiss. [64]; [65]; [66].

## III. Analysis

### A. Fraud

The elements of a fraud claim are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 496 (1996).[2] Defendants do not dispute

---

[2] This court has jurisdiction because Subsero Capital is a citizen of Michigan, defendants are all citizens of Illinois or Florida, and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1); [78]–[82]. Illinois law applies. *See Paulsen v. Abbott Lab'ys*, 39 F.4th 473, 477

that the complaint pleads the first two elements with particularity—it identifies the document, the people who assembled it, when they did so, and how. [1] ¶¶ 82–88, 93–95.

But the complaint does not allege that Subsero Capital relied on the forged guaranty. It alleges the opposite—Subsero Capital "knew it had never signed the Guaranty and contested the Guaranty claim from the inception of the Cook County Lawsuit." [1] ¶ 4. Its first filing in that case denounced the document as fabricated. [64-2]. The complaint does not, nor could it, identify anything Subsero Capital did or refrained from doing because it believed the guaranty was genuine. The only entity the complaint describes as having been misled is the Circuit Court of Cook County. [1] ¶¶ 84, 97, 108, 129. Deceiving a tribunal is a serious matter, but it is not a fraud on the never-deceived opposing litigant.

Subsero Capital does not engage with reliance, a necessary element of its fraud claims. It does not use the word, and it points to no allegation that could supply it. It instead recasts the fraud theory as extortion or abuse of process, [71] at 7–11, a different tort addressed below. A litigant "effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss." *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

The damages element fails for a related reason. The injury alleged is the cost of defending the Cook County and Rock Island suits, plus "lost opportunities" and

(7th Cir. 2022) (noting that a federal court sitting in diversity applies the choice-of-law rules of the forum state and, under Illinois choice-of-law rules, the forum state's law applies unless an actual conflict is shown or the parties agree that forum law does not apply).

reputational harm asserted without supporting facts. [1] ¶¶ 41, 117–18, 131–32, 143. Fraud damages must be "damages resulting from reliance on the statement," *Connick*, 174 Ill.2d at 496, and litigation expense incurred in refusing to accept a misrepresentation is not that. "[A]ttorneys fees and expenses of litigation can not be recovered in a subsequent suit as damages by a successful plaintiff who has been forced into litigation by reason of the defendant's wrongful conduct." *Ritter v. Ritter*, 381 Ill. 549, 557 (1943). "If the wrongful conduct of a defendant causing the plaintiff to sue him would give rise to an independent tort and a separate cause of action, there would be no end to the litigation." *Id.* at 555. Illinois permits recovery of the expense of litigation "with third parties" caused by a defendant's wrong, *id.* at 554–55, but Subsero Capital's litigation was with these defendants.

The complaint does not state a fraud claim against Choslovsky and O'Connor or against Wilkes and Ginsberg Jacobs. I do not reach the argument that the allegations against Wilkes fail to plead scienter with the particularity Rule 9(b) requires.

**B. Conspiracy**

"Civil conspiracy consists of a combination of two or more persons for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54, 62 (1994). It is a theory of liability, not a freestanding tort: "The function of a conspiracy claim is to extend liability in tort beyond the active wrongdoer to those who have merely planned, assisted or encouraged the wrongdoer's acts," and "[a] cause of action for civil conspiracy exists only if one of the parties to the agreement commits some

act in furtherance of the agreement, which is itself a tort." *Id.* at 62–63; *see also Horist v. Sudler & Co.*, 941 F.3d 274, 281 (7th Cir. 2019) (civil conspiracy "is not a separate cause of action under Illinois law"). Because the complaint does not state a claim of fraud against anyone, there is no tort for which conspiracy could extend liability to the defendants. The conspiracy theory falls with the fraud claim.

### C. Abuse of process

"Abuse of process is defined as the misuse of legal process to accomplish some purpose outside the scope of the process itself," and "[t]he only elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Kumar v. Bornstein*, 354 Ill.App.3d 159, 165 (2004). "The elements are strictly construed, as the tort of abuse of process is not favored under Illinois law." *Id.*

"Process" is "any means used by the court to acquire or to exercise its jurisdiction over a person or over specific property." *Holiday Magic, Inc. v. Scott*, 4 Ill.App.3d 962, 968 (1972). "Pleading must be distinguished from process. Pleadings are created and filed by the litigants." *Id.* "[M]ere institution of a suit or proceeding, even with a malicious intent or motive, does not itself constitute an abuse of process." *Id.* at 967. "Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process." *Bonney v. King*, 201 Ill. 47, 51 (1903). The action "lies for improper use of process after it has been issued for the purpose of accomplishing a result which could not be accomplished through the suit itself." *Withall v. Capitol Fed. Sav. of Am.*, 155 Ill.App.3d 537, 544 (1987). And while an arrest or seizure is not

required, "a plaintiff is required to plead some improper use of legal process." *Pace v. Timmermann's Ranch & Saddle Shop Inc.*, 795 F.3d 748, 758 (7th Cir. 2015); *see Kumar*, 354 Ill.App.3d at 166–69.

The acts the complaint identifies are the filing and prosecution of the Cook County and Rock Island suits—defendants sued Subsero Capital based on a document they knew it had not signed, kept the claim alive after O'Connor's deposition, and filed a second suit on the same facts, all to pressure Russell to pay NTI and abandon his Illinois cannabis interests. [1] ¶¶ 162–74. Those allegations describe a lawsuit brought for a bad reason, not a misuse of the court's process. Filing a complaint, attaching an exhibit to it, and amending it are pleadings, "created and filed by the litigants." *Holiday Magic*, 4 Ill.App.3d at 968. Seeking a money judgment is what a breach of contract suit is for, and pressure on the defendant to pay or settle is the regular pressure any civil suit exerts. If the claim is baseless and the motive malicious, Illinois law supplies a remedy—malicious prosecution after the suit ends in the defendant's favor. *See Bonney*, 201 Ill. at 50–51.

The complaint also alleges that defendants used depositions and subpoenas to learn how Russell's other businesses are run and financed and deposed Russell's wife about the family's assets. [1] ¶¶ 114–16. But the complaint does not allege that any process was used to compel Subsero Capital to do something collateral to the litigation. It alleges that defendants asked questions, in discovery supervised by the circuit court, that Subsero Capital believes were motivated by competitive curiosity. That is a bad motive for a regular use of discovery, not an abuse. The further

allegation that defendants "pursued litigation against Duncan and Vazquez," two of NTI's former employees, "to coerce them to give false testimony," [1] ¶ 175, is a conclusion without supporting facts and describes an injury to Duncan and Vazquez, not Subsero Capital.

The complaint fails to state a claim for abuse of process.

**D. Statute of limitations**

The lawyer defendants argue in the alternative that all claims against them are time-barred, and the NTI defendants argue that the abuse of process claim is time-barred. Because the complaint establishes when Subsero Capital knew the facts on which it sues, I reach the statutes of limitations as an alternative ground.

1. *Claims against the lawyer defendants*

An "action for damages based on tort, contract, or otherwise [] against an attorney arising out of an act or omission in the performance of professional services … must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b). The "arising out of" language "indicates an intent by the legislature that the statute apply to all claims against attorneys concerning their provision of professional services," and "[t]here is no express limitation that the professional services must have been rendered to the plaintiff. Nor does the statute state or imply that it is restricted to claims for legal malpractice." *Evanston Ins. Co. v. Riseborough*, 2014 IL 114271, ¶ 23. "[I]t is the nature of the act or omission, rather than the identity of the plaintiff, that determines whether the statute … applies." *Id.* ¶ 19. "[T]he plain language of the statute directs that the two-year limitation applies

to all claims against an attorney arising out of acts or omissions in the performance of professional services, and not just legal malpractice claims or claims brought against an attorney by a client." *800 S. Wells Com. LLC v. Horwood Marcus & Berk Chartered*, 2013 IL App (1st) 123660, ¶ 13.

Subsero Capital's claims against the lawyer defendants arise out of professional services. By the complaint's own account, the lawyers assembled the guaranty "in preparation for the commencement of the Cook County Lawsuit" on their clients' behalf, [1] ¶ 94; filed and prosecuted that suit, [1] ¶¶ 2–3, 84, 89; signed amended pleadings in it, [1] ¶¶ 99–101, 141; filed the Rock Island suit, [1] ¶ 169; and conducted discovery, [1] ¶ 114. Subsero Capital says that fabricating a document is not the provision of professional services simply "because the fraudsters are lawyers." [71] at 6. But the statute asks whether the claim arises out of the attorney's professional services, not whether those services were performed lawfully. *See Evanston*, 2014 IL 114271, ¶¶ 8, 23 (applying the statute of limitations to an allegation of fraudulent misrepresentation to a non-client). Preparing exhibits and filing pleadings are professional services, however wrongfully performed. The five-year period Subsero Capital invokes is the general period for fraud under 735 ILCS 5/13-205; it does not displace the specific statute governing actions against attorneys.

The limitations period begins to run when the plaintiff "knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Knox Coll. v. Celotex Corp.*, 88 Ill.2d 407, 414 (1981). "Wrongfully caused" is "a general or generic term, and not a term of art," and "does not connote

knowledge of negligent conduct or knowledge of the existence of a cause of action." *Id.* at 416; *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 22. Once the plaintiff knows of the injury and its wrongful cause, "the burden is upon the injured person to inquire further as to the existence of a cause of action." *Knox Coll.*, 88 Ill.2d at 416 (quoting *Witherell v. Weimer*, 85 Ill.2d 146, 156 (1981)).

Subsero Capital had that knowledge in December 2022. It "knew it had never signed the Guaranty and contested the Guaranty claim from the inception of the Cook County Lawsuit." [1] ¶ 4. That month, it told the circuit court that NTI and its attorneys had "doctored up a false signature page," that the page "was taken from a wholly separate executed agreement and inserted by Plaintiffs to create a fake Guaranty," and that the lawyers "actually altered the signature page of that document themselves." [64-2] at 2, 5, 8. That is the theory of this lawsuit. Subsero Capital believed it had been wrongfully injury no later than December 2022; the two-year period expired in December 2024; and Subsero Capital did not sue any lawyer defendant until September 2025 or file this case until December 31, 2025.

Subsero Capital argues that it did not know "the circumstances under which the document came to be signed including who signed it" until O'Connor's August 2025 deposition, and that before then the fabrication might have been innocent misassembly or the work of its own transactional counsel. [71] at 13. The discovery rule does not wait for the plaintiff to learn how the wrong was accomplished or to confirm the wrongdoer's state of mind—it asks when the plaintiff knew enough to be put on notice. *Knox Coll.*, 88 Ill.2d at 416. Subsero Capital's position in 2022 was not

that something might have gone innocently wrong. It was that the lawyers had committed a fraud on the court and should be sanctioned for it. Learning more in 2025 about how they did so did not restart the clock.

Subsero Capital also reframes its claims as resting on conduct after August 13, 2025: the verification and filing of the second and third amended complaints and the lawyers' failure to withdraw the guaranty claim. [71] at 2, 12. Those acts are within two years, but they do not revive claims that accrued in 2022. The injury alleged is being sued on a forged guaranty, and the act that caused it was the assembly and filing of the document in November 2022. "A continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation." *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 278 (2003). The amended pleadings added and then dropped alter-ego defendants; they did not change the guaranty claim. [1] ¶¶ 5, 105; [73] at 3–4. To the extent Subsero Capital asserts claims based solely on the 2025 filings, those claims are timely but fail for the reasons already given.

One defendant is not similarly situated to the others. Zmuda filed the Rock Island suit in 2024, [1] ¶¶ 109–11, 169, and any 2024 filing is within two years of December 31, 2025. Insofar as the abuse of process theory rests on that suit, it is not untimely on the face of the complaint; it fails on the merits alone. With that exception, the claims against the lawyer defendants are time-barred.

2. *Abuse of process against the NTI defendants*

Section 13-214.3 does not apply to the NTI defendants, who are not attorneys, but "[a]n action for abuse of process is governed by the two year statute of limitations

set out in section 13-202 of the Code of Civil Procedure," and "commences to run from the date that the last act giving rise to the cause of action has accrued." *Withall*, 155 Ill.App.3d at 544. Subsero Capital does not dispute that a two-year period applies; it argues only that the period began in August 2025. [71] at 13–14. For the same reasons the claims against the lawyer defendants accrued in 2022, that argument fails. As with the lawyer defendants, a theory based on the 2024 Rock Island filing is not untimely on the face of the complaint and fails on the merits alone. The abuse of process claim against the NTI defendants is otherwise untimely as well as insufficient.[3]

**E. The litigation privilege**

Defendants also invoke Illinois's absolute litigation privilege. The privilege originated as a defense to defamation claims based on statements in judicial proceedings, Restatement (Second) of Torts § 586 (1977), and Illinois courts have extended it to attorney conduct on the reasoning that "[l]imiting the privilege to communications, as opposed to conduct, would undermine the policies behind the privilege." *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 27; *see also Scarpelli v. McDermott Will & Emery LLP*, 2018 IL App (1st) 170874, ¶¶ 18–25. But the Illinois Supreme Court "has never expressly adopted this particular provision and all of its language," *O'Callaghan*, 2015 IL App (1st) 142152, ¶ 26, and the parties have not

[3] If that statute of limitations for actions arising out of legal services did not apply, the abuse of process claim would still be time barred to the same extent against the lawyer defendants as well. The NTI defendants do not argue that the conspiracy theory against them is untimely, and I do not address the limitations period that would apply to it.

identified a decision applying the privilege to the fabrication of evidence. Whether a privilege that developed to protect advocacy reaches the alleged manufacture of an exhibit is a question on which Illinois law is unsettled. Because the complaint fails on other grounds, I do not reach it.

**F. Dismissal with prejudice**

"Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)). But nothing in Rule 15 "suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018). "A district court acts within its discretion in denying leave to amend, either by dismissing a complaint with prejudice or by denying a post-judgment motion, when the plaintiff fails to demonstrate how the proposed amendment would cure the deficiencies in the prior complaint." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015). Four considerations lead me to dismiss with prejudice.

First, Subsero Capital has not identified any way it could amend the complaint to fix its inadequacies. Its request for leave is a single sentence at the end of its brief, with no description of what a new pleading would add. [71] at 14.

Second, this is not Subsero Capital's first attempt to plead these theories. It asserted them as a third-party complaint and counterclaims in the Cook County case

in September 2025, again as counterclaims in November 2025, and chose to file here rather than take the circuit court's invitation to replead. [66-3]; [66-4]. The complaint here is the product of several rounds of drafting.

Third, the defects are not of a kind more facts could cure. The fraud theory fails not because the complaint omits an allegation of reliance, but because it affirmatively alleges that Subsero Capital never believed the guaranty was genuine. [1] ¶¶ 4, 81. The abuse of process theory fails because filing and pursuing lawsuits is not a misuse of process as a matter of Illinois law, and no further detail about motive would change that. The conspiracy theory depends on the incurable fraud theory. "Where it is clear that the defect cannot be corrected so that amendment is futile, it might do no harm to deny leave to amend and to enter an immediate final judgment." *Runnion*, 786 F.3d at 520.

Fourth, no amendment could cure the time bar on the claims arising from the Cook County suit. The dates on which Subsero Capital learned of the alleged fabrication and the dates on which it sued are fixed by its own complaint and filings.

## IV. Conclusion

Defendants' motions to dismiss, [64], [65], [66], are granted. Subsero Capital's complaint is dismissed with prejudice. Enter judgment and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: October 29, 2026